UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00122-GNS-HBB

RICKY CAGE                                                                    PLAINTIFF

v.

NTT DATA SERVICES, LLC                                                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (DN 24), Defendant's Motion for Summary Judgment (DN 36), and Plaintiff's Motion to Strike (DN 38).  The motions are ripe for adjudication.

### I.       STATEMENT OF FACTS AND CLAIMS

In 2018, Plaintiff Ricky Cage ("Cage") was hired by NTT Data Services, LLC ("NTT") to work as a Helpdesk Analyst.  (Pl.'s Mot. Partial Summ. J. Ex. 1, at 1, DN 24-2).  During his employment, NTT maintained an attendance policy that provided, in relevant part:

> 1.      It is recognized that illnesses and emergencies may arise from time to time.  If an employee is going to be absent or late for work, the employee must notify their Company manager as soon as possible, but no later than 30 minutes before the start of the employee's regularly scheduled workday.   If the employee's manager is not available, the employee is required to leave a voicemail.  If absent more than one day, the employee must notify their Company manager each day the employee is absent.
> 2.      After three (3) consecutive working days of absence due to illness, an employee must submit a note from the employee's health care provider to their applicable HR system (e.g., Ask HR) or the employee's Human Resources Business Partner, clearing the employee to return to work.   Under certain circumstances, the submission of a note from the employee's health care provider may be required for shorter periods of absence.
> 3.      If an employee is absent without notifying the Company for three (3) consecutive work days, it is assumed that the employee has voluntarily abandoned their position with the Company, and the employee will be deemed to have resigned.

1

> 4.    Absences due to an approved leave of absence or due to an emergency, where the employee was unable to notify the Company, are not subject to this policy.   Otherwise, employees who do not follow this policy are subject to disciplinary action, up to and including termination.

(Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 2, at 1, DN 36-2).  At the time of Cage's termination, his superior was Helpdesk Supervisor Cameron Cox ("Cox").  (Pl.'s Mot. Partial Summ. J. Ex. 1, at 2; Cox Decl. ¶¶ 2-3, DN 36-6).

On July 22, 2019, Cage received a written warning for four absences—on May 1, 10, and 11, 2019, and July 16, 2019—for which he did not report to work or failed to report his absence. (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 4, at 1, DN 36-4; Cox Decl. ¶ 5). Cage was expressly warned that he would be subject to further discipline, including termination, if any further attendance policy violations occurred.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 4, at 1).

On August 2, 2019, Cage received what Cox characterized as a final written warning. (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 5, at 1, DN 36-5; Cox Decl. ¶ 6). This warning was given after Cage reported to work late on July 26, 2019, and called out sick almost an hour after his shift started on July 29, 2019.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 5, at 1).

On October 7, 2019, Cage completed a certification requesting leave pursuant to the Family and Medical Leave Act ("FMLA"), due to his father's serious health condition and noted that he "need[ed] to assist [his] father with doctor's appointments and any other circumstances which require [him] to assist with his [father's] care."  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 7, at 1, DN 36-7).  The health care provider's section of the certification form completed by his father's physician noted that Cage would need to help his father three times per week, and up to two consecutive days due to episodic flare-ups.  (Def.'s Mot. Summ. J.

2

& Resp. Pl.'s Mot. Summ. J. Ex. 7, at 1-4).   On October 16, 2019, Cage's FMLA request was approved effective from September 23, 2019, to September 22, 2020.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 8, at 1, DN 36-8).

On December 20, 2019, Steven Cole met with Cage and provided another final written warning regarding workplace conduct.  (Def.'s Resp. Pl.'s Mot. Partial Summ. J. & Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 10, at 1, DN 36-10; Cox Decl. ¶ 10).   In addition to discussing his conduct, Cage was reminded of the attendance requirements, and Cole specifically noted that "[a]ny repeated or further incidences, excluding any FMLA or other protected leave, may result in further disciplinary action, up to and including termination of your employment."  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 10, at 1; Cox Decl. ¶ 10).

In January 2020, Cage was absent from work on three days for FMLA leave and missed five days due to illness.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 11, at 3, DN 36-11).  By mid-February, Cage had utilized most of his sick leave, and Cox met with Cage to discuss his absences.  (Cox Decl. ¶ 11).

On February 25, 2020, Lanie Hobbs ("Hobbs"), NTT's Senior Employee Relations Analyst, also met with Cage to discuss his absences.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 13, at 1, DN 36-13).  During the meeting, Hobbs notified Cage that he had exhausted his sick leave for 2020 and discussed expectations for future tardies and FMLA leave. (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 13, at 1).  She followed up that meeting with an email, which Cage acknowledged.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 13, at 1).

Cage was absent from work due to FMLA leave from March 10-12, 2020.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. Ex. 14, at 4-5, DN 36-14).  On March 13, 2020, he was again absent, and the parties dispute whether Cage provided advance notice of this absence and whether it was FMLA related.  (Cage Aff. ¶ 5, DN 39-2; Bowman Decl. ¶ 9, DN 36-3; Cox Decl. ¶¶ 13, 16).  Based on that absence and Cage's history of absenteeism, NTT terminated his employment on March 16, 2020.  (Bowman Decl. ¶ 9; Cox Decl. ¶¶ 13-14)

Cage subsequently filed this action against NTT and alleges that NTT retaliated against him in violation of the FMLA.  (Compl., DN 1-1; Am. Compl. ¶¶ 11-13, DN 10).  Following discovery, the parties filed competing motions for summary judgment.[1]  (Pl.'s Mot. Partial Summ. J., DN 24; Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J., DN 36).  In addition, Cage moves to strike NTT's supplemental discovery and two declarations it filed relating to the dispositive motions.  (Pl.'s Mot. Strike, DN 38).

## II.      JURISDICTION

Federal courts have jurisdiction over actions originating in state court but have been removed to the federal district court in the district and division embracing the place where the action was pending.  28 U.S.C. § 1441(a).  The action was brought in Warren Circuit Court, within this Court's district and division.  The Court has subject-matter jurisdiction over the action under federal question jurisdiction.  *See id.* § 1331.

## III.     DISCUSSION

### A.      Motions for Summary Judgment

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] While Cage's motion is styled as one for partial summary judgment, he seeks summary judgment on his sole cause of action.  (Pl.'s Mem. Supp. Mot. Partial Summ. J. 3-8, DN 24-1).

matter of law." Fed. R. Civ. P. 56(a).  There is no genuine issue of material fact when "looking to the record as a whole, a reasonable mind could come to only one conclusion . . . ."  *Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 186 (6th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).  "When moving for summary judgment the movant has the initial burden of showing the absence of a genuine dispute as to a material fact."  *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists 'a genuine issue for trial.'"  *Id*. (citing *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004)).

While the evidence is viewed in the light most favorable to the non-moving party, it must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

A plaintiff may prove a claim of FMLA retaliation with either direct or circumstantial evidence.  *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008).  The parties disagree about regarding the proper characterization of the evidence in the record.

1.      *Direct Evidence*

Direct evidence is evidence that "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (citation omitted), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009); *see also Pelcha v. MW Bancorp, Inc.*, 455 F. Supp. 3d 481, 497 (S.D. Ohio 2020) ("'[D]irect' evidence is 'smoking gun' evidence 'that explains itself.'" (citation omitted)). To constitute direct evidence, it "must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [FMLA leave], but also that the employer acted on that predisposition." *DiCarlo*, 358 F.3d at 415 (citation omitted).  If believed, direct evidence of discrimination "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 432 (6th Cir. 2014) (internal quotation marks omitted) (citation omitted).

There appears to be direct evidence in this case.  According to NTT, the proverbial straw that broke the camel's back was Cage's absence on March 13, 2020.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. 8-9; Bowman Decl. ¶ 9; Cox Decl. ¶¶ 13-14, 16).  According to Sheri Bowman, NTT's Senior Director of Employee Relations, Cage failed to provide advance notice of his absence on that day and Cox reported that he did not receive notice.  (Bowman Decl. ¶ 9).  "This was the trigger that caused Mr. Cage's termination from employment, which built upon the various unprotected absences referenced in prior Written and Final Written Warnings, plus Mr. Cage's repeated struggle to give the mandatory advance notice of necessary absences required of all employees."  (Bowman Decl. ¶ 9).  Importantly, Cox stated that no one at NTT was notified of Cage's request for FMLA leave for that day and NTT made the decision

to terminate Cage's employment.  (Cox Decl. ¶¶ 13, 16).  NTT also contends that Cage's phone

records do not reflect a call to notify anyone at NTT of his absence.[2]  (Def.'s Mot. Summ. J. &

Resp. Pl.'s Mot. Partial Summ. J. Ex. 15, at 1-4, DN 36-15).

       Cage recalls the events differently.  He contends that his father suffered a decline in his

health during the week of March 9, 2020, and was taken to an emergency room in Nashville,

Tennessee, on March 12, 2020, and was admitted the following day.  (Cage Aff. ¶ 3).  According

to Cage:

> Prior to the start of [his] shift on the morning of March 12, 2020, [he] called
> Cameron Cox and advised him that [Cage's] father was having serious health
> issues and further advised [Cox] that [Cage] was going to be using FMLA leave
> on Thursday, March 12, 2020 and Friday, March 13, 2020.  Cameron Cox
> indicated that he understood and told [Cage] that he would see [Cage] on
> Monday, March 16, 2020.

(Cage Aff. ¶ 5)  A document provided by NTT during discovery (Bates No. NTT-DATA-0089),

reflects that Cage was on intermittent FMLA leave from March 10-13, 2020.[3]  (Pl.'s Mot. Partial

Summ. J. Ex. 5, at 1, DN 24-6).  Thus, this document could be construed by the jury to contradict

NTT's version of what transpired and the reasons for its decision to terminate Cage.

---

[2] While NTT cites these phone records, it is not self-evident which phone numbers may be
related to NTT or any of its employees.

[3] Bowman's declaration appears to be an attempt to rebut that document, and she states:

> While Mr. Cage ultimately applied to the third-party administrator for coverage of
> his March 13, 2020, absence and that absence was treated as covered by FMLA,
> that approval has no impact on the termination decision, which was instead
> triggered by Mr. Cage's failure to give advance notice of his absence, as required
> by the Attendance Policy.

(Bowman Decl. ¶ 11).  Nevertheless, there appears to be a factual dispute between Bowman's
contention and the documentation that Cage was on FLMA leave at the time of his "final straw"
absence.

Accordingly, there is a genuine issue of material fact precluding summary judgment for either party to the extent that Cage relies on direct evidence. The parties' summary judgment motions are denied on this basis.

### 2.     *Circumstantial Evidence*[4]

Even in the absence of direct evidence, Cage could rely upon circumstantial evidence to prove his claim, and both parties assert that they are entitled to summary judgment on this basis. (Pl.'s Mem. Supp. Mot. Partial Summ. J. 5-7; Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. 15-19). "An FMLA retaliation claim based solely upon circumstantial evidence of unlawful conduct is evaluated according to the tripartite burden-shifting framework set forth in *McDonnell Douglas*." *Daugherty*, 544 F.3d at 707 (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007)).

### a.     *Prima Facie* **Case**

To prove a *prima facie* case of retaliation under the FMLA, Cage must present evidence that:

> (1) [he] was engaged in an activity protected by the FMLA; (2) the employer knew that [he] was exercising [his] rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)). A plaintiff must prove his *prima facie* case by a preponderance of the evidence. *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir.

---

[4] In *Demyanovich*, the Court discussed the reliance on both types of evidence in reversing the trial court's grant of summary judgment in favor of the employer on an FMLA retaliation claim. *See Demyanovich*, 747 F.3d at 432-33. Thus, it is appropriate to analyze Cage's claim under both types of evidence.

2007) (citation omitted).  This burden "is not intended to be an onerous one."  *Bryson*, 498 F.3d at 571 (internal quotation marks omitted) (citations omitted).

For the purpose of its motion, NTT concedes that Cage can prove the first three prongs but challenges the fourth.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. 12-15). "To establish the causal connection required to satisfy the fourth prong of [his] *prima facie* case, [the employee] must produce sufficient evidence from which an inference could be drawn that [his] protected activity was a but-for cause of the alleged adverse action by [the] employer." *Woida v. Genesys Reg'l Med. Ctr.*, 4 F. Supp. 3d 880, 899 (E.D. Mich. 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).  NTT contends that it is entitled to summary judgment based on a lack of temporal proximity and an intervening act—Cage's non-FMLA absence on March 13, 2020.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. 12-15).

In arguing a lack of temporal proximity, NTT asserts that Cage's termination occurred more than five months after he requested FMLA leave and relies upon a sister court's decision in *Foster v. Roadtec, Inc.*, No. 1:18-CV-270-TAV-CHS, 2021 WL 1910082 (E.D. Tenn. May 21, 2021).  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. 12-15).  The plaintiff in *Foster* had been taking intermittent FMLA leave and was included in a RIF.  *See Foster*, 2021 WL 1910082, at *2-4.  The plaintiff contended that his inclusion in the group of employees selected for the RIF was in retaliation for his exercise of FMLA leave, in addition to other arguments raised as to why he was improperly terminated.  *See id.* at *11-13.  The Court found the plaintiff failed to present sufficient evidence as to any theory of pretext to create a factual issue precluding summary judgment—not that the plaintiff had failed to prove a *prima facie* case of retaliation.  *See id.* at *8-9, *11-13.

Here, the events and—more importantly—the reason for the absence that triggered Cage's termination are disputed.  If the jury were to be believe Cage, he notified Cox of the absence to care for Cage's seriously ill father due to intermittent FMLA leave, and Cox decided to terminate Cage's employment despite the notification of FMLA leave.  If the jury were to believe NTT, Cage had an unexcused absence because he failed to report his absence in advance—notwithstanding NTT's later characterization of the absence as being due to FMLA leave.

NTT also contends that Cage's absence was an intervening act precluding a finding of causation.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. 14-15).  As discussed above, however, there is conflicting evidence as to the reason for Cage's absence and whether he gave advance notice of the absence on March 13, 2020.  If Cage did give proper notice, the absence due to FMLA leave would not be an intervening act.

As Cage's burden to prove a *prima facie* case is not onerous, and when construing the evidence in the proper light, this evidence is sufficient for Cage to meet his initial burden.  *See Bryson*, 498 F.3d at 571 (citations omitted).

### b.      Legitimate, Nondiscriminatory Reason

Because Cage met his burden, NTT must articulate a legitimate, nondiscriminatory reason for the termination.  *See Gates v. U.S. Postal Serv.*, 502 F. App'x 485, 489 (6th Cir. 2012) (citation omitted).  NTT maintains that its decision to terminate Cage was due to his violations of its attendance policy.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. 15).  Because courts have recognized that terminating an employee for violations of an attendance policy is a legitimate, nondiscriminatory reason, NTT has met its burden.  *See Norton v. LTCH*, 620 F. App'x 408, 412 (6th Cir. 2015) (citing *Ritenour v. Tenn. Dep't of Hum. Servs.*, 497 F. App'x 521, 532 (6th Cir. 2012)).

### c.    Pretext

Because NTT met its burden, Cage must prove that the proffered reason was a pretext for discrimination.  *See Gates*, 502 F. App'x at 489 (citation omitted).  As the Sixth Circuit explained:

> A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.  "Whichever method the plaintiff employs, he always bears the burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[] intentionally discriminated against him."

*Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (alterations in original) (internal citation omitted) (citation omitted).

The record reflects conflicting evidence upon which the jury could reasonably find for Cage by rejecting NTT's stated explanation and infer retaliation, or the jury could disbelieve Cage and find for NTT.  As discussed above, Cage contends he spoke with Cox about Cage's absences covered by FMLA leave on March 12-13, 2020.  (Cage Aff. ¶ 5).  Cox denies any notification, despite the fact that NTT included March 13, 2020, on its list of days that Cage took FMLA leave.  (Cox Decl. ¶ 13; Pl.'s Mot. Partial Summ. J. Ex. 5, at 1).

NTT asserts that it can rely upon the honest belief rule in arguing that Cage cannot prove pretext.  (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. 18-19).  The Sixth Circuit has stated:

> Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.  An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied "on the particularized facts that were before it at the time the decision was made."

*Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (internal citation omitted) (citation omitted).  The same disputed evidence discussed above, however,

could lead a jury to find that NTT lacked an honest belief given that Cage arguably provided Cox advance notice of his need for FMLA leave on March 13, 2020, which NTT would have known when it made the decision to terminate Cage. *See Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 517-18 (6th Cir. 2021) (reversing summary judgment for the employer because the record did not reflect an honest belief); *Rush v. E.I. DuPont De Nemours & Co.*, 911 F. Supp. 2d 545, 567 (S.D. Ohio 2012) (noting that the evidence could be construed as undermining the employer's stated reasons for the honest belief and denying the motion for summary judgment).

Given the conflicting evidence concerning Cage's claimed advance request to Cox to take FMLA leave, a reasonable jury could find that NTT's stated reason for the adverse employment action was pretextual and in retaliation for Cage exercising his rights under the FMLA. Alternatively, the jury could believe NTT's stated reasons and find that Cage failed to provide proper notice of his intent to take FMLA leave. Accordingly, summary judgment is denied for both parties.

### 3.    *Attorneys' Fees*

Finally, NTT moves for summary judgment due to the failure to Cage's counsel to respond to discovery requests regarding attorneys' fees. (Def.'s Mot. Summ. J. & Resp. Pl.'s Mot. Partial Summ. J. 19-22). NTT's only cited case is *Gunasekera v. War Memorial Hospital, Inc.*, 841 F. App'x 843, 847 (6th Cir. 2021), which is distinguishable through its procedural posture. In that case, the plaintiff prevailed at arbitration but failed to present evidence to determine the amount of attorneys' fees to be awarded. *See id.* at 845.

In this instance, Cage has not yet prevailed on his FMLA retaliation claim and his counsel is not yet entitled to attorneys' fees from NTT. At the appropriate time, NTT can challenge any such request and its reasonableness. *See Clements v. Prudential Protective Servs.*,

*LLC*, 100 F. Supp. 3d 604, 616 (E.D. Mich. 2015) ("The FMLA's attorney-fee provision requires that the attorneys' fees be awarded at a reasonable rate."   (citing 29 U.S.C. § 2617)). Accordingly, the motion is denied on this basis.

### B.   Motion to Strike

Finally, Cage moves to strike what he characterizes as belated discovery responses by NTT.  (Pl.'s Mot. Strike, DN 38).   In particular, he contends that NTT did not supplement its discovery responses until after the close of discovery and he had moved for summary judgment. (Pl.'s Mem. Supp. Mot. Strike 1-2, DN 38-1).  He asserts that NTT used the belated responses to assert that his termination was due to an unexcused absence on March 13, 2020.  (Pl.'s Mem. Supp. Mot. Strike 2).   In addition, he seeks to strike Bowman and Cox's declarations as self-serving and contradictory to NTT's discovery responses.  (Pl.'s Mem. Supp. Mot. Strike 2, 4-5).

Given the apparent limited discovery depositions taken in this case,[5] NTT responds that Cage should have deposed more witnesses and notes that Cage had scheduled Bowman and Cox's depositions but ultimately did not depose them.[6]  (Def.'s Resp. Pl.'s Mot. Strike 1, 3-5, DN 42).   During Bowman and Cox's deposition preparation, NTT's counsel discovered additional documents related to this dispute, which it produced to Cage's counsel via email on the last day to conduct the discovery depositions.  (Def.'s Resp. Pl.'s Mot. Strike Ex. 6, at 1, DN 42-6; Def.'s Resp. Pl.'s Mot. Strike Ex. 7, at 1, DN 42-7).

While gamesmanship cannot be condoned to the extent that it may have occurred during discovery, it is also each party's responsibility to make strategic decisions about which witnesses

---

[5] While Cage was deposed, the parties have only provided five pages from that transcript.  It is unclear whether any other witnesses were deposed because the parties have provided limited evidence relating to their motions.

[6] The original fact discovery deadline was June 15, 2022, and at the request of the parties, the Court extended that deadline until September 6, 2022, to allow for the depositions of Cage, Bowman, and Cox.  (Scheduling Order 2, DN 14; Order, DN 26).

to depose.  *See Rofail v. United States*, 227 F.R.D. 53, 58 (E.D.N.Y. 2005) ("Open discovery is the norm.   Gamesmanship with information is discouraged and surprises are abhorred. Adherence to these principles assists the trier of fact and serves efficiency in the adjudication of disputes."); *Pauley v. United Operating Co.*, 606 F. Supp. 520, 527 (E.D. Mich. 1985) ("[D]efendants have no one to blame but themselves for [] [any] flaws in their discovery strategy.").   Admittedly, the emails from NTT's counsel containing the additional discovery were sent on the last day of the extended deadline for discovery depositions.   When provided with the additional discovery, however, it does not appear that Cage sought an extension of time to conduct depositions in response to that eleventh-hour discovery.

As discussed above, neither party is entitled to summary judgment in this case due to the conflicting evidence surrounding the reasons for Cage's termination.   Accordingly, as the issues raised in this motion pertain to the dispositive motions, the Court views the issues as moot.

### IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.      Plaintiff's Motion for Partial Summary Judgment (DN 24) is **DENIED**.

2.      Defendant's Motion for Summary Judgment (DN 36) is **DENIED**.

3.      Plaintiff's Motion to Strike (DN 38) is **DENIED AS MOOT**.

Greg N. Stivers, Chief Judge
United States District Court

March 29, 2023

cc:     counsel of record

14